The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to the misjoinder or non-joinder of parties.
3. Plaintiff was employed by the City of Raleigh on May 17, 1997.
4. Plaintiff earned an average weekly wage of $812.45.
5. The City of Raleigh is and was self-insured during plaintiff's employment with the City of Raleigh.
6. On May 17, 1997 plaintiff suffered a compensable injury to his lower back during his employment with the defendant-employer.
7. Plaintiff was out of work as a result of the compensable injury from August 8, 1997 until August 25, 1997, and defendant-employer has paid temporary total disability payments for that period. Plaintiff returned to full duties beginning August 25, 1997.
8. Plaintiff left work on April 20, 1998, and underwent a surgical procedure (anterior cervical fusion). He has not been paid any temporary total disability for time out of work since leaving his job on April 20, 1998.
9. Documents stipulated into evidence include the following:
a. Stipulated Exhibit #1: Plaintiff's medical records;
b. Industrial Commission Forms 19, 28, 33, 33R.
10. The depositions of Sgt. J.L. Medlin, Sgt. Barry Tucker, Dr. Wayne L. Harper, Dr. Kenneth J. Rich, and Dr. Paul Suh are a part of the evidentiary record in this case.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission rejects the findings of fact made by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing plaintiff was 45 years old and had been employed as a police officer with the Raleigh Police Department since 1976.
2. On May 17, 1997, plaintiff sustained an admittedly compensable low back injury by accident in the course of his employment with defendant-employer when he drove his patrol car off the roadway to avoid a head-on collision. In the process, plaintiff hit a ditch and his vehicle lodged between two small trees.
3. Plaintiff treated with Dr. Wayne Harper on May 21, 1997. On this date, plaintiff complained of pain and stiffness in the right posterolateral upper trapezius area of the back, but stated that he had no numbness or tingling in the arms or legs.
4. Plaintiff again treated with Dr. Harper on July 23, 1997, and reported his lower back strain as a result of his injury by accident was doing better. Dr. Harper suspected an L4-5 herniated disk and ordered an MRI of the lumbar spine only that did not include the cervical spine area.
5. An MRI performed July 24, 1997, revealed no bulging or herniated discs or surgical back problems in the lumbar spine. On July 25, 1997, plaintiff began physical therapy and began wearing a TENS unit. Dr. Harper released plaintiff to return to full duty in August 1997. Defendants paid temporary total disability to the plaintiff from August 8, 1997, until August 25, 1997; however, no Form 21 was ever submitted to, or approved by the Industrial Commission. Plaintiff performed his regular, full duties from August 25, 1997 until April 20, 1998.
6. Following his return to work, plaintiff's lower back pain persisted. Plaintiff continued treatment with Dr. Harper including visits on October 14, 1997, and November 14, 1997. Plaintiff stated no cervical spine complaints during either of these visits.
7. On March 16, 1998, plaintiff returned to Dr. Harper and complained of pain in the left side of the neck and left upper trapezius and numbness in his left fingertips. On this date, plaintiff indicated that his lower back pain was tolerable and that he was working in spite of lower back pain.
8. Dr. Harper referred plaintiff to neurosurgeon, Dr. Kenneth J. Rich. A cervical spine MRI performed on April 4, 1998, revealed a left-sided bulging cervical disc at C6-7. Dr. Rich performed an anterior cervical disketomy or C6-7 fusion on plaintiff on May 1, 1998. Dr. Rich could not state to a reasonable degree of medical probability that plaintiff's cervical problems were causally related to the May 17, 1997, accident.
9. Plaintiff returned to Dr. Rich for follow-up visits on June 9, 1998, and July 21, 1998; however, plaintiff did not report any symptoms of lower back pain during any of these visits. On July 21, 1998, Dr. Rich planned to release plaintiff to return to work as a police officer three weeks thereafter.
10. Plaintiff returned to Dr. Harper on September 1, 1998, and indicated that his lower back pain had flared which was his primary medical problem now.
11. Although plaintiff mentioned lower back pain on his March 16, 1998 visit to Dr. Harper, he did not mention any lower back pain to neurosurgeon Dr. Rich on his first visit with him on April 9, 1998. On September 22, 1998, plaintiff informed Dr. Rich of his lower back pain. Prior to September 22, 1998, plaintiff had made no mention of lower back pain to Dr. Rich during his entire approximately five month course of treatment with him which included surgery. On this date, Dr. Rich extensively discussed with plaintiff returning to work as a police officer. Dr. Rich ordered a lumbar MRI which was performed on October 14, 1998. This MRI revealed no evidence of disk herniation in the lumbar spine.
12. Dr. Suh, who performed a one-time independent medical examination of plaintiff on September 23, 1999, indicated that the injury by accident did have an effect upon plaintiff's neck, but he was unable to determine its priority among other causes. Additionally, Dr. Suh deferred the opinion regarding causation to doctors who examined plaintiff more proximal to the accident.
13. The greater weight of the evidence fails to demonstrate that plaintiff's cervical condition is causally related to his May 17, 1997, injury by accident. From the date of the accident, May 17, 1997, to March 16, 1998, plaintiff had no complaints related to his neck. Furthermore, plaintiff reported only right-sided shoulder pain that Dr. Harper described as muscular, not neurogenic, and this soreness resolved shortly after the accident. Plaintiff's cervical symptoms that arose on March 16, 1998, approximately one year later, and his herniation at C6-7 were on the left side of his neck. Plaintiff's right shoulder complaints that arose immediately after the accident are unrelated to his left-sided disk rupture.
14. The onset of plaintiff's cervical symptoms on March 16, 1998, is too remote from the date of the auto accident which occurred on May 17, 1997, to adequately establish causation to a reasonable degree of medical probability without competent expert medical testimony. None of the medical testimony provides sufficient evidence to establish that the May 17, 1997, accident caused plaintiff's cervical problems.
15. The greater weight of the competent evidence establishes that plaintiff's lower back strain resolved and he did not report lower back pain again to his treating physicians until September, 1998, or four months after plaintiff underwent C6-7 disc herniation surgery and was slated to returned to work following complete recovery from the surgery.
16. Beginning August 25, 1997, and continuing, plaintiff was capable of earning the same or greater wage as at the time of his compensable injury by accident.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On May 17, 1997, plaintiff sustained an admittedly compensable injury by accident to his lower back that arose out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6).
2. Plaintiff did not sustain an injury to his cervical spine as a result of plaintiff's work-related injury by accident on May 17, 1997; therefore, plaintiff is not entitled to any disability benefits related to his cervical condition including any benefits for his nonrelated disability which began April 20, 1998, the date he stopped working for defendant-employer. N.C.G.S. § 97-2(6).
3. Since as of August 25, 1997, plaintiff has been capable with respect to his lower back injury of earning the same or greater wages as he was at the time of his injury by accident, plaintiff is not entitled to further weekly disability benefits beyond that date. Any disability beyond April 20, 1998, is related to his cervical spine condition and not his compensable lower back condition. N.C.G.S. § 97-29.
4. As a result of his lower back injury by accident of May 17, 1997, plaintiff is entitled to payment of reasonably necessary medical expenses which tend to effect a cure, provide relief or lessen the period of disability subject to the limitations of N.C.G.S. § 97-25.1. However, plaintiff is entitled to no medical treatment for his unrelated cervical condition. N.C.G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim for additional temporary total disability benefits related to his cervical spine condition is hereby denied.
2. Defendants shall pay the costs due this Commission.
This the ___ day of ___ 2001.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER